IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| HOWARD R. ATHON, JR., | : | |
| Plaintiff, | : | |
| vs. | : | 5:06-CV-1 (CAR) |
| DIRECT MERCHANTS BANK, | : | |
| Defendant. | : | |

*ORDER ON DEFENDANT'S MOTION TO COMPEL ARBITRATION
AND TO STAY OR DISMISS ACTION*

Plaintiff Howard R. Athon, Jr., proceeding *pro se*, originally filed this action in state court against Defendant HSBC Bank Nevada, N.A. ("HSBC"), successor in interest to Direct Merchants Credit Card Bank, N.A. ("Direct Merchants"), alleging violations the federal Fair Debt Collection Practices Act, 15 U.S.C. § § 1692 et seq. ("FDCPA"). HSBC removed the action to this Court under the Court's federal question jurisdiction pursuant to 28 U.S.C. § 1331. Currently pending before the Court are HSBC's Motion to Compel Arbitration and to Stay or Dismiss Action [Doc. 26] and several motions by Plaintiff to stay all decisions [Docs. 34, 37, 40 and 42]. For the reasons stated below, the Court compels arbitration and dismisses this action. Thus, HSBC's Motion to Compel Arbitration [Doc. 26] is **GRANTED**, Plaintiff's remaining motions [Docs. 34, 36, 40 and 42] are **DENIED as moot**, and this case is **DISMISSED** with prejudice.

## BACKGROUND

The dispute at issue currently before the Court arises from Plaintiff and his wife's, Sandra Athon's, use of a credit card Plaintiff claims neither he nor his wife ever opened or authorized.

The evidence shows that in November 2001, HSBC[1] mailed a MasterCard credit card and Cardmember Agreement to Plaintiff's address at 504 Ivelyn Court, Warner Robins, Georgia 31088. Sandra Athon was an authorized user on the account. For four years, from December 2001 through December 2005, the Athons received monthly account statements at their residence showing the HSBC account usage. For almost three and a half years, from January 2002 through May 2005, the Athons made on-line payments on this account, in varying amounts ranging from $42 to $115.

In the summer of 2001, prior to the Athons' obtaining their credit card account, HSBC added an arbitration provision to the Cardmember Agreement by way of a change in terms notice (the "Arbitration Agreement"). For new accounts, like the Athons', opened after the addition of the arbitration provision, an arbitration addendum was added to the Cardmember Agreement. The record shows that HSBC mailed the Arbitration Agreement addendum to Plaintiff on or about November 20, 2001, at the same address where the original agreement and the monthly statements were mailed. HSBC has no evidence indicating that Plaintiff objected to the agreement. Pursuant to the terms of the Arbitration Agreement, the parties agreed to arbitrate all claims and disputes between them:

> Any claim, dispute or controversy (whether in contract, regulatory, tort, or otherwise, whether pre-existing, present or future and including constitutional, statutory, common law, intentional tort and equitable claims) arising from or relating to the Account or application for your Account, or advertisements, promotions, or oral or written statements related to the Account, goods or services financed under the Account or the terms of financing, the relationships which result from this Agreement (including, to the full extent permitted by applicable law, relationships with third parties) or the validity, enforceability or scope of this

---

[1] At that time, the creditor on the account was Direct Merchants, which was later acquired by HSBC.

> Arbitration (collectively "Claim"), shall be resolved, upon the election of you or us or said third parties, by binding arbitration. . . .

Subsequent to the receipt of the Arbitration Agreement, new charges continued to accrue from use of the HSBC credit card.

Plaintiff originally filed this action in state court asserting that HSBC harassed and abused Plaintiff in its efforts to collect the past due amount accrued on the HSBC credit card account, in violation of FDCPA. HSBC removed the case to this Court and now asserts that Plaintiff's claims are governed by the Federal Arbitration Act ("FAA"), and this Court must dismiss this action and compel arbitration. Plaintiff asserts, essentially, that his claims are not subject to the FAA because neither he nor his wife ever agreed to or authorized the account, thereby making the Arbitration Agreement unenforceable.

## STANDARD OF REVIEW

Pursuant to the FAA, a written arbitration "provision in any . . . contract evidencing a transaction involving interstate commerce . . . [is] valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C.A. § 2. The FAA establishes a "federal policy favoring arbitration." Moses H. Cone Mem'l Hosp., 460 U.S. 1, 24 (1983). Indeed, under the FAA, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Id. at 24-25; see also Ruby-Collins, Inc. v. City of Huntsville, Ala., 748 F.2d 573, 576 (11th Cir. 1984) ("[F]ederal policy requires that we construe arbitration clauses generously, resolving all doubts in favor of arbitration.").

Although federal policy favors arbitration, under the FAA, a district court must compel arbitration only if the parties have agreed to arbitrate their dispute; "parties cannot be forced to submit to arbitration if they have not agreed to do so." Chastain v. Robinson-Humphrey Co., 957

F.2d 851, 853-54 (11th Cir. 1992) (citing 9 U.S.C. § § 2, 3). Accordingly, "the question whether the parties have submitted a particular dispute to arbitration, *i.e.,* the 'question of arbitrability,' is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.'" Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002) (quoting AT&T Techs., Inc. v. Commc'ns Workers, 475 U.S. 643, 649 (1986)). Issues to be decided by the court "include certain gateway matters, such as whether the parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy." Battels v. Sears Nat'l Bank, 365 F. Supp. 2d 1205, 1211 (M.D. Ala. 2005) (quoting Green Tree Fin. Corp. v. Bazzle, 539 U.S. 444, 451-53 (2003)).

As a general rule, when considering these "gateway matters," the court "may consider only issues relating to the making and performance of the agreement to arbitrate," and not issues relating to the making of the contract generally. Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 404 (1967); John B. Goodman Ltd. P'ship v. THF Constr., Inc., 321 F.3d 1094, 1095-96 (11th Cir. 2003) (per curiam). "Prima Paint's mandate is that challenges to the validity of the contract as a whole must be presented to the arbitrator." Rollins, Inc. v. Foster, 991 F. Supp. 1426, 1431 (M.D. Ala. 1998).

There is an exception to the Prima Paint rule, however, for "cases where not merely enforceability, but the initial formation or existence of a contract, including a disputed arbitration clause, is legitimately called into question, and must be decided by the court." Rainbow Invs., Inc. v. Super 8 Motels, Inc., 973 F. Supp. 1387, 1390 (M.D. Ala. 1997). Cases in which there is no signed contract and in which one party denies the existence of an agreement, like the case here, fall into this category. The Eleventh Circuit has explained:

4

> Under normal circumstances, an arbitration provision within a contract admittedly signed by the contractual parties is sufficient to require the district court to send any controversies to arbitration. Under such circumstances, the parties have at least presumptively agreed to arbitrate any disputes, including those disputes about the validity of the contract *in general*. Because the making of the arbitration agreement *itself* is rarely in issue when the parties have signed a contract containing an arbitration provision, the district court usually must compel arbitration immediately after one of the contractual parties so requests.
>
> The calculus changes when it is undisputed that the parties seeking to avoid arbitration has not signed any contract requiring arbitration. In such a case, that party is challenging the very existence of *any* agreement, *including the existence of an agreement to arbitrate*. Under these circumstances, there is no presumptively valid general contract which would trigger the district court's duty to compel arbitration pursuant to the [FAA]. If a party has not signed an agreement containing arbitration language, such a party may not have agreed to submit grievances to arbitration at all. Therefore, before sending any such grievances to arbitration, *the district court itself* must first decide whether or not the non-signing party can nonetheless be bound by the contractual language.

Chastain, 957 F.2d at 854 (emphasis in original, citations and footnotes omitted). The court, in applying these "gateway issues," applies ordinary state common law governing contract formation. See Taylor, 325 F. Supp. 2d 1304, 1309-10 (citations omitted).

## DISCUSSION

The issue here centers upon the existence of an agreed-upon arbitration agreement and whether it can be enforced. Because Plaintiff disputes the very existence of any agreement relating to the HSBC credit card account, including any agreement to arbitrate, Plaintiff's claims are within Prima Paint's exception, and this Court, not the arbitrator, must determine the threshold issue as to whether the Arbitration Agreement can be enforced. Plaintiff argues that the Cardmember Agreement and, thus, the Arbitration Agreement, are not enforceable because neither he nor his wife ever signed or otherwise assented to any such agreements. HSBC, on the other hand, argues that Plaintiff and his wife did assent to the Cardmember Agreement, which

5

includes a valid arbitration agreement that encompasses Plaintiff's claims, and therefore, the Court is required to compel arbitration of this case under the FAA. 9 U.S.C. §§ 3 - 4. The Court agrees, finding that a written agreement to arbitrate exists in this case and is enforceable.

The Court finds all of Plaintiff's arguments challenging the validity of an agreement to arbitrate unpersuasive. To the extent Plaintiff claims he never received either the Cardmember Agreement or the Arbitration Agreement, the totality of the evidence establishes otherwise. "The law recognizes a rebuttable presumption that an item properly mailed was received by the addressee." Battels, 365 F. Supp. 2d at 1213 (citing Konst v. Fla. E. Coast Ry., 71 F.3d 850, 851 (11th Cir. 1996)). In this case, the credit card, Cardmember Agreement, and Arbitration Agreement were mailed to Plaintiff's address as part of a routine process. Furthermore, these agreements were mailed to the same address that Plaintiff's billing statements were mailed, statements Plaintiff not only acknowledges he received but also to which he responded in the form of payments, thereby indicating that the mail did, in fact, reach him. Accordingly, the Court can presume that Plaintiff and his wife received the original Cardmember Agreement and subsequent Arbitration Agreement.

Plaintiff's argument that he is not bound by the Arbitration Agreement because he never signed *any* agreement pertaining the account is also unavailing. First, the FAA only requires that the agreement to arbitrate be written, not that it be *signed*. 9 U.S.C. § 2. As such, "[i]t is well-established that a written agreement to arbitrate need not be signed by the parties as a prerequisite to the enforcement of the agreement." Middlebrooks v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 1989 WL 80446, *2 (N.D. Ala. April 5, 1989); accord Marino v. Dillard's, Inc., 413 F.3d 530 (5th Cir. 2005); Nghiem v. NEC Elec., Inc., 25 F.3d 1437, 1439 (9th Cir.

6

1994); Stedor Enters., Ltd. v. Armtex, Inc., 947 F.2d 727, 733 (4th Cir. 1991); Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840 (2d Cir. 1987). There is no dispute here that the Arbitration Agreement is a written document.

Second, under Georgia law, the parties to an arbitration agreement may demonstrate their assent to be bound by the agreement by acting upon or accepting benefits under the contract containing the arbitration agreement even though they do not sign it. See, e.g., Comvest, LLC v. Corporate Sec. Group, Inc., 234 Ga. App. 277, 280-281 (1987) ("[P]arties may become bound by the terms of a contract, even though they do not sign it, where their assent is otherwise indicated, such as by the acceptance of benefits under the contract, or the acceptance by one of the performance by the other.") (citations omitted); First Citizens Mun. Corp. v. Pershing Div. of Donaldson, Lufkin & Jenrette Sec. Corp., 546 F. Supp. 884, 887 (N.D. Ga. 1982) ("Like any other contract, a contract containing an arbitration provision may be binding on the parties based upon their course of conduct."). Here, Plaintiff and his wife assented to the Arbitration Agreement through their continued use of the credit card and continued payments on the account for over three years after receiving the addendum.

In several filings with this Court, Plaintiff claims neither he nor his wife ever opened the credit card account in the first place, that an imposter opened the account. Even assuming Plaintiff and his wife did not open the account and therefore did not assent to the Cardmember Agreement, they nevertheless ratified the account by accepting the benefits of the account and making payments on the account. See, e.g., Am. Computer Tech., Inc. v. Hardwick, 274 Ga. App. 62, 65-66 (2005). The Athons made monthly payments on the account for three and a half years, in varying amounts, depending on what their finances would allow each month, thereby

7

establishing their cognizance of the HSBC credit card account. Furthermore, neither Plaintiff nor his wife called or wrote to HSBC claiming that the account was fraudulent or unauthorized. Under Georgia law, "ratifying conduct can include silence, or payment pursuant to an allegedly unauthorized agreement." Id. at 66. Because the Athons' conduct–even assuming they did not initially open the account– demonstrates their ratification of the account, Plaintiff is bound by the entire Cardmember Agreement, including the Arbitration Agreement addendum.

Finally, Plaintiff argues that he and his wife were confused or mistaken when they made payments on the account. Plaintiff states that they made payments on the HSBC account "not knowing what was going on," thinking that the payments were for another credit card account Plaintiff's wife already had established with the company. These types of claims–claims regarding the enforceability, not the existence, of the agreement as a whole–however, are for the arbitrator to decide, not the Court. "Claims alleging unconscionability, coercion, or confusion in signing the agreement generally should be determined by an arbitrator because those issues go to the formation of the entire contract rather than to the issue of misrepresentation in the signing of the arbitration agreement." Coleman v. Prudential Bache Sec., Inc., 802 F.2d 1350 (11th Cir. 1986) (per curiam) (citing Merrill Lynch, Pierce, Fenner, & Smith v. Haydu, 637 F.2d 391, 398 (5th Cir. Unit B 1981)); see also Prima Paint Corp., 388 U.S. at 406.

Having found that the Arbitration Agreement is valid and enforceable, the Court must now determine whether the claims alleged in the Complaint are within the scope of the Arbitration Agreement. The Court finds they are. The Arbitration Addendum expressly applies to "[a]ny claim, dispute or controversy . . . arising from or relating to this Account." Plaintiff's Complaint alleges that HSBC's collection practices in attempting to collect the past due amounts

8

on the account were in violation of the FDCPA. There is no doubt that all of Plaintiff's claims relate to the HSBC credit card account, and are, therefore, subject to the Arbitration Agreement. Thus, the Court must compel arbitration. 9 U.S.C. § 4; see also Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985) ("By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates the district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed.").

In cases such as the one at bar, where all of the plaintiff's claims are subject to arbitration, the Court may dismiss with prejudice, rather than stay, the action. See, e.g., Alford v. Dean Witter Reynolds, 975 F.2d 1161, 1164 (5th Cir. 1992) ("The weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration."); Clayton v. Woodmen of the World Life Ins. Soc., 981 F. Supp. 1447, 1451 (M.D. Ala. 1997).

## CONCLUSION

For the reasons stated above, HSBC's Motion to Compel Arbitration and Stay or Dismiss Action [Doc. 26] is **GRANTED**. Plaintiff's Motion to Stay all Decisions [Doc. 34]; Motion to Issue Subpoena, to Stay all Motions on Countersuit, to Stay all Motions to Enforce Arbitration, and to Carry Lawsuit against Bank into Court [Doc. 37]; Motion to Compel [Doc. 40]; and Motion to Dismiss Answer and Counter Suit [Doc. 42] are **DENIED as moot**. Because all issues raised in Plaintiff's Complaint must be submitted to arbitration, this case is hereby **DISMISSED with prejudice**.

**SO ORDERED**, this 11th day of April, 2007.

9

S/ C. Ashley Royal
                                                C. ASHLEY ROYAL, JUDGE
                                                UNITED STATES DISTRICT COURT
SSH/aeg